**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**PATRICIA H.,**

**Plaintiff,**

       **Case No. 1:24-cv-00422-TK**

    **v.**

**COMMISSIONER OF SOCIAL**        **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for disability insurance benefits. That final decision was issued by the Appeals Council on February 26, 2024.  After filing the complaint in this case, Plaintiff  moved for judgment on the pleadings (Doc. 12) and the Commissioner filed a similar motion (Doc. 16).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I.  BACKGROUND

Plaintiff filed an application for disability insurance benefits on February 24, 2021, alleging a disability beginning on October 26, 2009.  After initial administrative denials of her application, Plaintiff appeared at a hearing before an Administrative Law Judge on November 17, 2022.  Both Plaintiff and a vocational expert, Kathleen Doehla, testified at the hearing.

On April 5, 2023, the ALJ issued an unfavorable decision.  In that decision, the ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025, and that she had not engaged in substantial gainful activity since her alleged onset date.  Next, the ALJ determined that Plaintiff suffered from severe impairments including carpal tunnel syndrome, right lateral epicondylitis, diabetes mellitus, peripheral neuropathy, and obesity.  The ALJ further found that none of these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the ability to perform light work except that she could not climb ladders, ropes, or scaffolds, could not crawl, could occasionally perform activities requiring feeling, and could frequently finger.  Plaintiff had past relevant work as nutrition consultant, and the ALJ determined, based on the testimony of the vocational expert, that Plaintiff could still perform that job.  As a result,

the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises these issues:

1.  The Commissioner erred in failing to properly evaluate the favorable opinion of treating orthopedic surgeon Dr. Landfried under 20 C.F.R. §404.1520C.

2.  Failure to properly evaluate the opinion of the consultative examining physician (and the Commissioner's expert) Dr. Liu pursuant to SSR 96-8P and failure to include overhead reaching limitations and a sit-stand option in the RFC finding.

Plaintiff's memorandum, Doc. 12-1, at 11-12, 18.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 55 years old at the time of the administrative hearing, first testified that she attended college but left just short of obtaining her associates' degree.  Her past work included three years as a community educator where she focused on nutrition and data entry.  She also worked for the Evangelical Lutheran Church on a part-time basis.  Plaintiff said that she could not work full-time due to problems with her hands, which included bruising and swelling.  That could be caused by walking or handling, and she described problems with her grip and her fine motor skills.  She also had difficulty typing due to lack of hand strength.

When asked about treatment, Plaintiff testified that she had been to many different doctors and also underwent pain management and surgeries.  Some of the surgeries caused secondary injuries to her hands.  She was able to do some household chores but needed to take breaks and had help from her husband.  Driving also affected her hands, and she experienced pain even while sleeping.  She was able to tolerate lidocaine patches and wore braces on her hands, but other than ice and rest, nothing seemed to address the issue.  Finally, Plaintiff testified that her doctors have limited her to working no more than 20 hours per week.

The vocational expert, Ms. Doehla, first identified Plaintiff's past work as a nutrition consultant and as an administrative assistant, both of which were light jobs.  She was then asked questions about a person who could work at the light exertional level but who could not crawl or climb ladders, ropes, and scaffolds, and who had limitations in her ability to finger and feel with both hands.  In response, she said that such a person could do both of Plaintiff's past jobs. If the person could grasp or finger only occasionally, however, she could not perform those jobs or any other light or sedentary work, but restrictions in bending, kneeling, crouching, and climbing stairs would not be work-preclusive.  Lastly, she testified that a person could not be off-task for more than 10% of the time and still be employed, and that the jobs she identified did not ordinarily permit unscheduled breaks to be taken.

-2-

## B.  Medical Evidence

Because much of Plaintiff's argument focuses on the opinions rendered by a treating source, Dr. Landfried, the Court's review of the medical evidence will also be centered on his treatment records and findings, supplemented by other records which deal with the pain and limitations which Plaintiff claims to have experienced in her hands and how it affected her ability to do more than part-time work.  The Court will begin by summarizing records dating back to 2010, the year after Plaintiff asserts that her disability began.

An examination note from Dr. Miller dated in August of 2010 shows a diagnosis of lateral epicondylitis in her right elbow and residual carpal tunnel syndrome symptoms bilaterally.  Her treating physician, Dr. Landfried, who had made the referral to Dr. Miller, had previously stated that Plaintiff was able to work but had a ten-pound lifting restriction and could not engage in repetitive work.  Another physician, Dr. Ohri, also imposed a ten-pound lifting restriction with the right hand and assessed her degree of impairment at 75%.  It appears that Plaintiff had undergone right carpal tunnel release surgery earlier that year, and she was reporting to Dr. Landfried later in the year that she now had pain, numbness, and tingling in the left hand.  He considered her to be "partially moderately disabled" at that time (Tr. 417).  An evaluation was done for workers' compensation services by Dr. Horvath in December, 2010, and he concluded that Plaintiff had left carpal tunnel syndrome and also demonstrated exquisite tenderness in the right elbow.  She was scheduled for elbow surgery early in 2011.

Dr. Landfried performed the surgery on January 6, 2011.  Later that year, he also performed a carpal tunnel release of the left hand.  Her elbow symptoms improved after the earlier surgery but she was still reporting carpal tunnel symptoms in her right hand as well as on the left.  Also, she was still having pain and tingling in both hands in the months after the carpal tunnel release.  Plaintiff was again examined by Dr. Horvath in connection with her workers' compensation claim after seeing her on December 15, 2011, he concluded that although she complained of persistent elbow and wrist pain, she was capable for working without restriction and there was no disability.

In 2012, Plaintiff was seen several times by Dr. Bates.  She told Dr. Bates that she had pain, numbness, and swelling in her hands.  Dr. Bates believed that Plaintiff suffered from peripheral neuropathy and she made a referral to Dr. Gosy for pain management.  Dr. Gosy examined Plaintiff in June, 2012, and she reported to him that activity caused swelling in her hands along with aching, burning, and a loss of dexterity.  On examination, she had diminished grip strength and mild swelling of the hands, and movement of her wrists was painful.  He concluded that she suffered from chronic pain syndrome and he recommended various medications including topical lidocaine.  Dr. Bates later reported in a note that Plaintiff's job had ended due to a lapse in grant money but also that she was only able to work part-time.  A subsequent record showed that Dr. Gosy prescribed a cock-up splint, and he also concluded that Plaintiff had a 50% temporary impairment.  He submitted similar reports throughout the next several years, noting that Plaintiff said that even while working part-time, she was experiencing

burning and cramping in her right arm and hand and that her typing was slow due to cramping and neurasthenia. Her sleep was also interrupted due to pain. He recommended that she avoid activities that exacerbated her condition. Dr. Hitt later took over her care, and his notes show that Plaintiff was also using a TENS unit at home to help with pain. He continued the assessment that her disability was 50%, as did Dr. Dave, another physician whom Plaintiff was seen by. Earlier, after Dr. Gosy began to see Plaintiff, she was seen by Dr. Heck for workers' compensation purposes, and in 2013 he concluded that Plaintiff was "disabled enough" by her condition that she should be given a disability rating of 40%.

Plaintiff went back to Dr. Landfried in February of 2019 seeking treatment of what she described as bilateral wrist and hand pain which never fully resolved after the surgeries he had done earlier. She also reported swelling and bruising with overuse of her hands and said that she would drop objects. On examination, she demonstrated diminished strength in both wrists with diminished light touch sensation. A recent MRI did not show any acute changes. Dr. Landfried thought she would benefit from seeing a hand and wrist specialist, and he concurred with the other assessments that her degree of disability was 50%. The same year, Plaintiff was seen by Dr. Fink with the Plastic Surgery Group of Rochester. He noted that prior MRI and nerve conduction studies were unremarkable and she demonstrated only some non-localized tenderness in the wrists. She told him that she was performing her normal activities without restriction, and he did not think she was disabled based on her hands.

### C. Opinion Evidence

Plaintiff saw Dr. Liu for a consultative physical examination on June 9, 2021. She told him that she was currently employed for 16 hours per week and that she had suffered from chronic whole body pain and arthritis for many years as well as bilateral carpal tunnel syndrome. She was able to perform routine household chores like cooking, cleaning, and doing laundry. On examination, she demonstrated low back pain which affected her ability to squat and to walk on heels and toes. There was some limitation of motion in the lower back and straight leg raising was positive. Her hand and finger dexterity was intact and her grip strength was 5/5 bilaterally. Dr. Liu stated that Plaintiff had mild to moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting and standing, and stair climbing. (Tr. 2548-52).

On the same day, Plaintiff was evaluated by Dr. Santarpia, a consultative psychologist. Plaintiff reported a diagnosis of PTSD and said she had some level of anxiety. She did not demonstrate any abnormalities in her demeanor, thought processes, or concentration, and Dr. Santarpia found no work-related limitations. (Tr. 2555-58).

There is also a Manipulative Limitations Medical Source Statement completed by a Ms. Robbins-Yonkin at Oak Orchard Health on October 18, 2022. That document indicates that Plaintiff's symptoms included tenderness, pain, muscle spasm, redness, paresthesia, swelling, limitation of motion, and reduced grip strength. Her limitations included using her hands for

grasping, turning, and twisting less than 10% of the day and being unable to use her hands for fine manipulation.

There are also opinions from state agency reviewers in the file.  Dr. May, a psychologist, concluded that Plaintiff did not have a severe mental impairment, an assessment concurred in by Dr. Dekeon.  Dr. Miller and Dr. Ehlert both expressed the opinion that Plaintiff could do light work with manipulative limitations relating to fingering, which could be performed frequently with both hands, and feeling, which could only be done occasionally.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV.  DISCUSSION

In her first claim of error, Plaintiff argues that the ALJ did not correctly apply the factors of supportability and consistency when evaluating the opinion of treating source Dr. Landfried. In particular, she asserts that the ALJ "cherry picked" the evidence and disregarded the long-standing treating relationship when discounting Dr. Landfried's view that Plaintiff was limited to lifting no more than ten pounds and working no more than 20 hours per week.  The

Commissioner responds that the ALJ had a sufficient basis for concluding that Plaintiff could do light work and that the factors of supportability and consistency were properly considered with respect to each of the relevant medical opinions.

Here is what the ALJ said about the opinions of Dr. Landfried and others.  After determining that the medical evidence did not fully support Plaintiff's claim of disabling symptoms, and after reviewing that evidence in detail, the ALJ concluded that the objective findings showed full range of motion and preserved motor strength.  The ALJ also noted that Plaintiff had undergone only conservative treatment and pointed to statements that Plaintiff continued to perform her activities of daily living without limitation.  According to the ALJ, that evidence justified limiting Plaintiff to light work with some manipulative restrictions.  (Tr. 34-35).

The ALJ then found that the opinions of the state agency reviewers as to Plaintiff's physical capabilities were persuasive for essentially the same reasons.  Turning to the opinion of Dr. Liu, the ALJ concluded, again citing the same evidence (which is set out in detail below), that the record supported mild, but not moderate, limitations in prolonged work-related activities. The ALJ did not accept the manipulative limitations from Ms. Robbins-Yonkin's opinion, noting that, in addition to the other evidence cited, it did not appear that Ms. Robbins-Yonkin treated Plaintiff for any hand conditions.

Lastly, the ALJ discussed the evaluations which were done for workers' compensation purposes.  The ALJ viewed them all as partially persuasive to the extent that they supported a limitation to light work activity, but rejected many parts of these opinions as vague.  Finally, turning to Dr. Landfried's opinion, which forms the basis for this claim of error, the ALJ provided this rationale:

> In various documents related to the claimant's application for Workers' Compensation benefits, Dr. Landfried, from August 24, 2010 to January 27, 2011 opined that the claimant could return to work with no lifting greater than 10 pounds, light duty "as tolerated," and "no repetitive work".... On October 6, 2010, primary care provide Dr. Ohri opined that the claimant had a ten-pound restriction on the right hand..... On January 4, 2011, Dr. Ohri noted that she was restricted from repetition motion and lifting.... The undersigned finds that these opinions are only partially persuasive, as the record supports the ability to lift, carry, push, or pull at the light exertion that would require her to lift, carry, push, and pull up to ten pounds frequently and twenty pounds occasionally. Moreover, the objective evidence only supports a limitation to occasional feeling and frequent fingering, including Dr. Landfried's treatment notes, which generally noted only para-incisional tenderness during the latter of his treatment of the claimant with no neurologic deficits. In addition, the record documents carpal tunnel release surgeries for the bilateral wrists in 2010 and 2011 and two operative procedures for the right elbow lateral epicondylitis in January 2010 and January 2011. Although the post-operative course of treatment shows some documentation

of persistent pain and other residual symptoms, it is notable that hand specialist Dr. Fink noted that the claimant was not a candidate for further injections or surgeries on her hands. Moreover, the overall evidence of record generally shows preserved motor strength, sensation, and reflexes in the hands, wrists, and elbows, along with periodic findings of vague references to reduced grip strength, positive Tinel's or Phalen's signs at the wrists, and very minimal and sporadic findings of allodynia to the fingertips. Otherwise, there have been objective findings of preserved ROM of the digits, wrists, and elbows, with a few references to some slowness in performing motion testing. During the latter portion of the period at issue, the claimant has received only routine and conservative treatment for the CTS and right lateral epicondylitis consisting of topical ointments, a TENS unit, and wrist braces, with references in the record that these treatment modalities provided pain relief such that she was able to continue working, albeit on a part-time basis as an administrative assistant. Moreover, there are numerous references in the record to the claimant's ability to perform her activities of daily living without accompanying limitations including on March 26, 2014 (8F/26-29), April 23, 2014 (8F/30-34), and July 23, 2014 (8F/35-38). Further, at the April 19, 2019 evaluation with hand specialist Dr. Fink, she reportedly indicated that she "has been performing her usual activities without restriction" (25F/2-4; 26F/32-33). As for the diabetes mellitus and neuropathy, the overall evidence of record shows periodic findings of decreased sensation in the feet, without any accompanying findings of gait/station abnormalities or other deficits in neurologic functioning.

On December 8, 2011, Dr. Landfried opined that the claimant could work no more than 20 hours per week.... In a March 27, 2013 letter, Dr. Landfried noted that the claimant had reached permanency with a "partial moderate disability"..... Under the current rules for the evaluation of opinion evidence, these types vague and conclusory statements are neither inherently persuasive nor valuable.

(Tr. 37-38).

This Court has explained how the regulations for evaluating expert medical opinions function after they were revised in March of 2017:

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

*Michael H. v. Comm'r of Soc. Sec.*, 2022 WL 768658, at *5 (W.D.N.Y. Mar. 14, 2022).

It does seem that, from reading that portion of the ALJ's decision quoted above, that the factors of consistency and supportability were considered. The ALJ rejected the earlier opinions of Dr. Landfried because, in her words, "the record supports the ability to lift, carry, push, or pull at the light exertion that would require [Plaintiff] to lift, carry, push, and pull up to ten pounds frequently and twenty pounds occasionally." (Tr. 37). In other words, she found his opinion to be inconsistent with and not supported by the record. It is not clear, however, exactly which portions of the record the ALJ concluded were inconsistent with or failed to support Dr. Landfried's opinion.

It is true that the state agency reviewers' opinions differed from his, and it is also true that the opinion of a non-examining source may be used to reject the opinion of a treating source, but that rule applies only if the record provides some support for the conclusions reached by the non-examiners. *See Smith v. Astrue*, 896 F.Supp.2d 163, 178 (N.D.N.Y. 2012). So that gets back to the issue of whether the ALJ correctly determined that there was record support for the proposition that Plaintiff could perform all of the requirements of light work activity with the exception of some postural and manipulative limitations.

The ALJ appears to have relied heavily on several factors, including the fact that Plaintiff was, at times, able to perform her activities of daily living "without limitation" and that she had undergone only conservative treatment. As to the latter factor, it is not clear what additional treatment was available to Plaintiff. She experienced four separate surgeries, used a TENS unit, wore splints on her wrists, went to physical therapy, and used lidocaine patches because she could not tolerate other pain medications. She was also referred to a pain specialist, Dr. Gosy. Dr. Gosy's notes indicate that she demonstrated pain in her wrists, mild swelling of her hands,

and tenderness in her elbows.  Dr. Gosy consistently concluded that her complaints were consistent with his objective findings.  He did indicate that she did not have restrictions, but also pointed out that she was working only part-time.  Plaintiff described her activities of daily living as consisting of part-time work, which caused pain and swelling in her hands and required her to avoid using her hands the following day.  Household chores also caused pain and tingling in her hands. Those are not activities consistent with the ability to perform light work activity, including frequent lifting and working five consecutive days of the week.  It should also be noted, as Plaintiff points, out, that the ALJ's conclusion that Dr. Landfried's opinion was unsupported by objective findings appears to conflict with the evidence of such findings contained in his examination notes.  All of this indicates that the reasons advanced by the ALJ for rejecting more restrictive opinions as to Plaintiff's functional capacity, as expressed by various treating sources, are not supported by the record.

This leads directly to Plaintiff's second claim of error.  Dr. Liu, the consultative examiner, had concluded that Plaintiff had a number of mild to moderate limitations, including for prolonged carrying.  The ALJ, using the exact same rationale as stated above, rejected the existence of any moderate limitations "because the overall evidence of record does not support it." (Tr. 36).  Again, however, the recitation of the "overall evidence" is not sufficient to support the conclusion that Dr. Liu's opinion, at least in its relevant respects, is either inconsistent with or not supported by the record.

The Court of Appeals, in a recent decision, found that an ALJ's erroneous rejection of opinion evidence for improper reasons, including the fact that it disregarded a consistent narrative demonstrated by the medical evidence, was error requiring remand.  *See Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60 (2d Cir. 2025).  Because the same error is present here, the case must be remanded for further proceedings.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 12), **DENIES** the Commissioner's motion (Doc. 16), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P.  Kemp**
**United States Magistrate Judge**